UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RALPH QUINONES | : | |
| | : | |
| v. | : | CA 06-136 T |
| | : | |
| JONATHAN C. MINER, | : | |
| Warden, USP Allenwood | : | |

**REPORT AND RECOMMENDATION**

Before the Court are two filings by Ralph Quinones ("Quinones"), an inmate at the United States Penitentiary in Allenwood, Pennsylvania ("USP Allenwood"): 1) a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"); and 2) a Motion to Proceed in Forma Pauperis ("Motion for IFP"). The matter has been referred to me by Chief Judge Ernest C. Torres for a Report and Recommendation as to whether this case should be dismissed or transferred to the United States District Court for the Middle District of Pennsylvania on the ground that it is a civil action against the warden at USP Allenwood. See Order of Referral to Magistrate Judge ("Order of Referral"). I have determined that no hearing is necessary. For the reasons stated below, I recommend that the Petition be dismissed and that the Motion for IFP be denied.

**I. Facts**

On March 23, 2006, the Court received the Petition and the Motion for IFP. In the Petition, Quinones indicates that he is serving a fifty-one month sentence at USP Allenwood, see Petition at 2, and alleges that his confinement is unlawful on four grounds, see id. at 4[1]-5. First, Quinones claims that he is required by the terms of his sentence to complete drug and

---

[1] Page 4 of the Petition continues on a continuation sheet which is also denominated as Page 4. To avoid confusion, the Court treats the two pages as one and cites it as Page 4.

alcohol abuse treatment and mental health and psychological treatment and that he is unable to comply with these requirements[2] because he has been confined in the "hole" at Allenwood since December 5, 2005, Petition at 4, and such treatment programs are apparently not available to persons so confined, see id. Although Quinones indicates that he voluntarily placed himself in the "hole" to avoid conflict with certain gang members who allegedly wanted to harm him, see id., he also alleges that his confinement therein is indefinite and that he has been told by the prison staff that he "cannot, will not be transferred until at least June 2007 ...," id.

Second, Quinones claims his indefinite confinement in the "hole" violates his "right to rehabilitate himself through programs that are available to the general population ...." Petition at 4. Quinones appears to contend that by preventing him from participating in such programs the Bureau of Prisons is violating its own directive. See id.

Third, Quinones alleges that his constitutional right to due process is being violated because allegedly there is no procedure

---

[2] Quinones' contention that as part of his sentence he was ordered by Judge Torres to participate in drug and alcohol abuse treatment and mental health and psychological treatment is not supported by the Judgment. See United States v. Ralph Quinones, CR 03-78 T, Judgment in a Criminal Case (Document ("Doc.") #21) ("Judgment") at 2. Although the Judgment reflects that Judge Torres recommended to the Bureau of Prisons that Quinones be assigned to an institution that had both a substance abuse counseling and treatment program and a mental health counseling and treatment program, there is no indication that Judge Torres ordered Quinones to participate in such programs while serving his sentence. See id.

Quinones possibly has in mind the special conditions of supervised release which require that he participate in and satisfactorily complete a program of substance abuse treatment and also participate in and satisfactorily complete a program of mental health treatment. See Judgment at 4. While Judge Torres imposed these special conditions, the requirement that Quinones comply with them begins when his supervised release commences, namely upon his release from prison.

or mechanism available for him to appeal or challenge his continued confinement in the "hole" and/or the refusal of the Bureau of Prisons to transfer him to another institution. Petition at 5. He indicates that he has also been told, presumably by prison staff, that there is no guarantee that he will be transferred in June of 2007 and that he may be required to serve his entire sentence at USP Allenwood. See id.

Fourth, Quinones alleges that a "thorough investigation could not have been completed." Id. Regarding this ground, Quinones asserts that if a thorough investigation had been made of his claim that he was at risk of harm from other inmates "it would be obvious to all that I cannot be placed on this ([A]llenwood) compound and thus a transfer is warranted ...." Petition at 5.

Based on these four grounds, Quinones contends that his continued confinement in the "hole" at USP Allenwood and the failure/refusal of the Bureau of Prisons to transfer him to another facility renders his imprisonment unlawful. See id. at 3-5. He appears to seek either release from confinement in the "hole" or transfer to another institution. See id. at 5.

## II. Law

### A. Habeas Corpus

Habeas corpus review is available under 28 U.S.C. § 2241 if a person is "in custody in violation of the Constitution or laws or treaties of the United States ...." 28 U.S.C. § 2241(c)(3). "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are 'an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.'" McIntosh v. United States Parole Comm'n, 115 F.3d 809, 811 (10th Cir. 1997)(quoting Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.2d

439 (1973))(alteration in original). Thus, a habeas corpus action challenges the fact or duration of physical confinement and seeks either immediate or speedier release from that confinement. See Preiser v. Rodriguez, 411 U.S. at 498, 93 S.Ct. at 1840; see also McIntosh v. United States Parole Comm'n, 115 F.3d at 812 ("A habeas corpus proceeding 'attacks the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement.") (citation omitted); id. ("[T]he essential nature of *all* § 2241 actions is a challenge to federal custody.").

In contrast, a prisoner who is seeking a different program or location is challenging the conditions of and not the fact of his confinement. McIntosh v. United States Parole Comm'n, 115 F.3d at 812. His remedy is under civil rights law. Id. The Court of Appeals for the Seventh Circuit has explained this distinction quite clearly:

> If the prisoner is seeking what can be fairly described as a quantum change in the level of custody--whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, ... then habeas corpus is his remedy. **But if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement** and his remedy is under civil rights law, even if, as will usually be the case, the program or location or environment that he is challenging is more restrictive than the alternative he seeks.

Glaus v. Anderson, 408 F.3d 382, 386-87 (7th Cir. 2005)(quoting Graham v. Broglin, 922 F.2d 379, 381 (7th Cir. 1991))(alteration in original)(bold added); see also Kamara v. Farquharson, 2 F.Supp.2d 81, 89 (D. Mass. 1998)("It is a well-settled principle that a habeas petition is the appropriate means to challenge the 'actual fact or duration' of one's confinement, see Heck v. Humphrey, 512 U.S. 477, 481, 114 S.Ct 2364, 2369, 129 L.Ed.2d 383

(1994), whereas a civil rights claim is the proper means to challenge the 'conditions' of one's confinement. See Viens v. Daniels, 871 F.2d 1328, 1333 (7th Cir. 1989) ...."). Thus, "habeas jurisdiction is absent, and a [42 U.S.C.] § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." Docken v. Chase, 393 F.3d 1024, 1030 n.4 (9th Cir. 2004)(quoting Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003)); see also Walker v. O'Brien, 216 F.3d 626, 636-37 (7th Cir. 2000)("[T]he legislative history of both the [Prison Litigation Reform Act ("PLRA")] and [the Antiterrorism and Effective Death Penalty Act ("AEDPA")] ... supports a clear line between civil actions attacking conditions of confinement (subject to the PLRA) and habeas corpus petitions attacking the fact or duration of confinement (subject to the rules governing habeas corpus).").

**B. Conditions of Confinement**

To demonstrate a prima facie violation of the Eighth Amendment's prohibition against cruel and unusual punishment based on the conditions of confinement, a prisoner must satisfy two requirements. See Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct 1970, 1977, 128 L.Ed.2d 811 (1994); see also Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). First, the deprivation alleged must be, objectively, "sufficiently serious," Farmer v. Brennan, 511 U.S. at 834, 114 S.Ct at 1977 (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)); see also Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992); a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," Farmer v. Brennan, 511 U.S. at 834, 114 S.Ct at 1977 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). Second, the prison official must have a "sufficiently culpable

state of mind," Farmer v. Brennan, 511 U.S. at 834, 114 S.Ct at 1977 (quoting Wilson v. Seiter, 501 U.S. at 297, 111 S.Ct. at 2323); see also id. at 302-03, 111 S.Ct. at 2326; Hudson v. McMillian, 503 U.S. at 5, 112 S.Ct. at 998; Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), such that he is deliberately indifferent to the inmate's health or safety, Farmer v. Brennan, 511 U.S. at 834, 114 S.Ct at 1977 (quoting Wilson v. Seiter, 501 U.S. at 302-303, 111 S.Ct. at 2326-27); see also Helling v. McKinney, 509 U.S. 25, 34-35, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993); Hudson v. McMillian, 503 U.S. at 5, 112 S.Ct. at 998; Estelle v. Gamble, 429 U.S. at 106, 97 S.Ct. at 292; Williams v. Griffin, 952 F.2d at 824 (stating that to establish a prima facie Eighth Amendment violation with respect to prison conditions plaintiff must demonstrate deprivation of a basic human need and deliberate indifference to prison conditions on part of prison officials).

The requirement that the claimed injury involve deprivation of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. at 2399, is the touchstone of a conditions of confinement suit, Hudson v. McMillian, 503 U.S. at 11, 112 S.Ct. at 1001. Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." Id. at 9, 112 S.Ct. at 1000; see also id. ("only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation")(quoting Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2324 (quoting Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. at 2399)(citation omitted)); Wilson v. Yaklich, 148 F.3d 596, 601 (6th Cir. 1998)(stating that a prisoner must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions before he can make any conditions of confinement claim with an arguable basis in the

Eighth Amendment); Doe v. Welborn, 110 F.3d 520, 524 (7th Cir. 1997)(finding, on facts of case, that prisoner's claim of psychological injury resulting from having to live in fear of assault by gang members did not "reflect the deprivation of 'the minimal civilized measures of life's necessities'")(quoting Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2324; Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. at 2399); Babcock v. White, 102 F.3d 267, 272 (7th Cir. 1996)(same). This requirement is based on the fact that the substantive limits on state action set by the Eighth Amendment and the Due Process Clause are transgressed only where the State "fails to provide for [a prisoner's] basic human needs--*e.g.*, food, clothing, shelter, medical care, and reasonable safety ...." DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200, 109 S.Ct. 998, 1005, 103 L.Ed.2d 249 (1989).

## III. Discussion

### A. Viability of Claim for Habeas Corpus

It is apparent from the allegations of the Petition that Quinones is not challenging the fact or duration of his physical confinement, but, rather, the conditions of that confinement. See Petition at 1, 4-7. Indeed, Quinones specifically indicates that this is so. See id. at 1 (indicating that Petition concerns jail or prison conditions). The relief he seeks is to be transferred to another institution or released from the "hole." See id. at 5. Although he has titled his pleading as a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, this does not alter the fact that the Petition actually challenges the conditions of his confinement. See Preiser v. Rodriguez, 411 U.S. at 498, 93 S.Ct. at 1840; McIntosh v. United States Parole Comm'n, 115 F.3d at 812; Kamara v. Farquharson, 2 F.Supp.2d at 89 (holding that prisoner's request for transfer to another facility "does not transform what is at heart a conditions-of-confinement

basis for his constitutional challenge"). Accordingly, I find that Quinones may not proceed with a habeas corpus petition. See Glaus v. Anderson, 408 F.3d at 388 (holding that prisoner may not proceed with a habeas corpus petition where his challenge concerned only the conditions of his confinement or the administrative rules of the Bureau of Prisons); Ramirez v. Galaza, 334 F.3d at 859 ("[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence.").

**B. Amenability of Claim to Being Recharacterized**

Having determined that the instant action should not be allowed to proceed as a habeas corpus petition, the Court now turns to the question of whether this action should be dismissed or transferred to the Pennsylvania federal district court which has jurisdiction over USP Allenwood. Such a transfer would involve recharacterizing the action as civil rights suit. The Seventh Circuit has recently considered this question in light of the changed legal landscape caused by the PLRA and the AEDPA:

> In Graham [v. Broglin, 922 F.2d 379 (7th Cir. 1991)], we wrote that if a *pro se* litigant "asks for habeas corpus when he should have brought a civil rights suit, all he has done is mislabel his suit, and either he should be given leave to plead over or the mislabeling should simply be ignored." 922 F.2d at 382. In Bunn v. Conley, 309 F.3d 1002 (7th Cir. 2002), however, we recognized that the proper scope of recharacterization had been narrowed as a result of the changed landscape caused by the ... (PLRA) and the ... (AEDPA). "[T]here are pitfalls of different kinds for prisoners using the wrong vehicle .... If a person files a habeas corpus petition that should be presented under other statutes, he or she may be subject to the three-strikes rule of the PLRA[3] and somewhat different exhaustion requirements."[4]

[3] "28 U.S.C. § 1915(g) of the ... Prison Litigation Reform Act (PLRA) ... precludes the filing of *in forma pauperis* (IFP) civil actions by a prisoner who has had similar petitions dismissed as

Id. at 1007. Other important differences include the identity of the defendant (the warden, versus the doctors, or guards, or others responsible for the alleged injury), the amount of the filing fee, the way in which exhaustion must be accomplished, and the type of restriction on successive lawsuits. In most cases, therefore, the district court should evaluate cases as the plaintiffs label them. Id.

This is not to say that recharacterization is utterly out of the question. In Castro v. United States, the Supreme Court considered the reverse of the current situation: recharacterization of a *pro se* litigant's civil rights claim into a petition under 28 U.S.C. § 2255. See 540 U.S. 375, 383, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003). The Court noted that a district court may recharacterize a civil rights claim, but before doing so it "must notify the *pro se* litigant that it intends to recharacterize the pleading, warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on 'second or successive' motions, and provide the litigant an opportunity to withdraw the motion or amend it so that it contains all the § 2255 claims he believes he has." Id. It seems to us that the same logic should apply to the potential conversion of a habeas corpus petition into a

---

frivolous on three or more prior occasions." Wilson v. Yaklich, 148 F.3d 596, 599 (6th Cir. 1998); see also 28 U.S.C. § 1915(g)("In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.").

[4] With regard to suits based on conditions of confinement, the PLRA provides in pertinent part that: "'[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002)(quoting 42 U.S.C. § 1997e(a) (1996))(first alteration in original); see also Porter v. Nussle, 534 U.S 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002)("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

> civil rights claim. **If the complaint is amenable to conversion on its face, meaning that it names the correct defendants and seeks the correct relief, the court may recharacterize the petition so long as it warns the pro se litigant of the consequences of the conversion and provides an opportunity for the litigant to withdraw or amend his or her complaint.**

Glaus v. Anderson, 408 F.3d 382, 388 (7th Cir. 2005)(fourth alteration in original)(bold added).

This Court finds the above analysis to be helpful and applies it to Quinones' case. The Petition as presently drafted alleges neither that Quinones is experiencing a serious deprivation of a basic human need nor that prison officials are deliberately indifferent to such deprivation, allegations necessary to plead a prima facie conditions of confinement case. See Williams v. Griffin, 952 F.2d at 824. Rather, he contends that he is unable to participate in drug, alcohol, and mental health treatment programs allegedly mandated by the Court because such programs are not available in the "hole," where he has voluntarily placed himself to avoid gang members who want to harm him. Petition at 4. By way of relief, Quinones seeks either a transfer to another institution or release from the "hole." See id. at 5.

As already noted,[5] Quinones' claim that he was ordered to participate in drug and alcohol abuse treatment and mental health and psychological treatment while incarcerated is not supported by the Judgment. Thus, any conditions of confinement claim based on this contention is clearly baseless and is subject to dismissal pursuant to 28 U.S.C. § 1915(d). See Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989)(stating that § 1915(d) accords judges the power "to pierce the veil of the complaint's factual allegations and

---

[5] See n.2.

dismiss those claims whose factual contentions are clearly baseless").

To the extent that Quinones contends he is being denied access to rehabilitative programs, I find that such deprivation does not constitute denial of a basic human need. Consequently, the failure to provide such programs (or to allow access to them) cannot provide a basis for a constitutional claim under the Eighth Amendment. See Moody v. Daggett, 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d (1976)(stating that Congress has given federal prison officials full discretion to control prisoner classification and eligibility for rehabilitative programs in the federal system and a "petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process"); see also Balla v. Idaho State Bd. of Corr., 869 F.2d 461, 470 (9th Cir. 1989)(finding support for "the proposition that those serving criminal sentences have no constitutional right to rehabilitation"). Similarly, Quinones has no constitutional right to be housed at a particular institution or to receive a particular security classification. See Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997). Thus, I conclude that, in the the absence of some contention by Quinones that his confinement in the "hole" deprives him of a basic human need, the failure of prison officials to transfer him to another institution or to release him from the "hole" cannot provide the basis for a constitutional claim pursuant to 42 U.S.C. § 1983.[6]

---

[6] Other than implying that the treatment programs in which he desires to participate are not available to him, Quinones has not described the conditions in the "hole." This omission strongly suggests that the deprivations he is experiencing do not involve denial of "the minimal civilized measure of life's necessities," Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991).

Nevertheless, if Quinones contends that the conditions in the "hole" are so onerous that he will suffer serious harm if he remains there for a long period of time and that the prison officials are

Accordingly, I find that the Petition is not amenable to being recharacterized as a civil rights action and transferred to the Middle District of Pennsylvania. Rather, it should be dismissed because it fails to state a claim upon which relief can be granted. I so recommend.

**C. Motion for IFP**

Having determined that Quinones may not proceed this action as a habeas corpus petition and that the action is not amenable to being recharacterized as a civil rights action, I recommend that the Motion for IFP be denied because the Petition fails to state a claim upon which relief may be granted, see 28 U.S.C. § 1915(e)(2)(B).

**Conclusion**

For the reasons stated above, I recommend that the Petition be dismissed and that the Motion for IFP be denied. Any

---

deliberately indifferent to his situation, he should file an objection to this Report and Recommendation so stating. In that objection, he should detail the onerous conditions, the harm he has experienced or will experience, and the prison officials' indifference to that harm. Cf. Sheley v. Dugger, 833 F.2d 1420, 1429 (11th Cir. 1987)("The deprivations associated with an institutional lock-up, including twenty-four hour confinement, and curtailment of all association, exercise and normal vocational and educational activity, may constitute a due process violation, as well as a violation of the Eighth Amendment, if they persist too long.").

If Judge Torres determines that the information contained in the objection allows the Petition to be recharacterized as a civil rights action and transferred to the United States District Court for the Middle District of Pennsylvania, I recommend that prior to such transfer Quinones be informed of the following consequences and given the opportunity to withdraw or dismiss the Petition prior to such recharacterization. First, he will be required to pay a filing fee of $250.00, and periodically money will be taken automatically from his prisoner's trust account until the full filing fee of $250.00 has been paid. See 28 U.S.C. § 1915(b). (Although the filing fee increased to $350.00 on April 9, 2006, because Quinones filed this action prior to that date, the lower filing fee applies to his case.) Second, if, after being recharacterized and transferred, this action is ultimately dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, it may count as one strike of the three-strikes provision of the PLRA, see 28 U.S.C. § 1915(g).

objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
April 28, 2006