UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RALPH QUINONES                         :
                                       :
          v.                           :        CA 06-136 T
                                       :
JONATHAN C. MINER,                     :
Warden, USP Allenwood                  :

**REPORT AND RECOMMENDATION**

Before the Court are two filings by Ralph Quinones
("Quinones"), an inmate at the United States Penitentiary in
Allenwood, Pennsylvania ("USP Allenwood"): 1) a Petition for Writ
of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"); and 2) a
Motion to Proceed in Forma Pauperis ("Motion for IFP").  The
matter has been referred to me by Chief Judge Ernest C. Torres
for a Report and Recommendation as to whether this case should be
dismissed or transferred to the United States District Court for
the Middle District of Pennsylvania on the ground that it is a
civil action against the warden at USP Allenwood.  See Order of
Referral to Magistrate Judge ("Order of Referral").  I have
determined that no hearing is necessary.  For the reasons stated
below, I recommend that the Petition be dismissed and that the
Motion for IFP be denied.

**I.  Facts**

On March 23, 2006, the Court received the Petition and the
Motion for IFP.  In the Petition, Quinones indicates that he is
serving a fifty-one month sentence at USP Allenwood, see Petition
at 2, and alleges that his confinement is unlawful on four
grounds, see id. at 4[1]-5.  First, Quinones claims that he is
required by the terms of his sentence to complete drug and

---

[1] Page 4 of the Petition continues on a continuation sheet which
is also denominated as Page 4.  To avoid confusion, the Court treats
the two pages as one and cites it as Page 4.

alcohol abuse treatment and mental health and psychological
treatment and that he is unable to comply with these
requirements[2] because he has been confined in the "hole" at
Allenwood since December 5, 2005, Petition at 4, and such
treatment programs are apparently not available to persons so
confined, see id. Although Quinones indicates that he
voluntarily placed himself in the "hole" to avoid conflict with
certain gang members who allegedly wanted to harm him, see id.,
he also alleges that his confinement therein is indefinite and
that he has been told by the prison staff that he "cannot, will
not be transferred until at least June 2007 ...," id.

Second, Quinones claims his indefinite confinement in the
"hole" violates his "right to rehabilitate himself through
programs that are available to the general population ...."
Petition at 4. Quinones appears to contend that by preventing
him from participating in such programs the Bureau of Prisons is
violating its own directive. See id.

Third, Quinones alleges that his constitutional right to due
process is being violated because allegedly there is no procedure

_____

[2] Quinones' contention that as part of his sentence he was
ordered by Judge Torres to participate in drug and alcohol abuse
treatment and mental health and psychological treatment is not
supported by the Judgment. See United States v. Ralph Quinones, CR
03-78 T, Judgment in a Criminal Case (Document ("Doc.") #21)
("Judgment") at 2. Although the Judgment reflects that Judge Torres
recommended to the Bureau of Prisons that Quinones be assigned to an
institution that had both a substance abuse counseling and treatment
program and a mental health counseling and treatment program, there is
no indication that Judge Torres ordered Quinones to participate in
such programs while serving his sentence. See id.
    Quinones possibly has in mind the special conditions of
supervised release which require that he participate in and
satisfactorily complete a program of substance abuse treatment and
also participate in and satisfactorily complete a program of mental
health treatment. See Judgment at 4. While Judge Torres imposed
these special conditions, the requirement that Quinones comply with
them begins when his supervised release commences, namely upon his
release from prison.

or mechanism available for him to appeal or challenge his
continued confinement in the "hole" and/or the refusal of the
Bureau of Prisons to transfer him to another institution.
Petition at 5. He indicates that he has also been told,
presumably by prison staff, that there is no guarantee that he
will be transferred in June of 2007 and that he may be required
to serve his entire sentence at USP Allenwood. See id.

Fourth, Quinones alleges that a "thorough investigation
could not have been completed." Id. Regarding this ground,
Quinones asserts that if a thorough investigation had been made
of his claim that he was at risk of harm from other inmates "it
would be obvious to all that I cannot be placed on this
([A]llenwood) compound and thus a transfer is warranted ...."
Petition at 5.

Based on these four grounds, Quinones contends that his
continued confinement in the "hole" at USP Allenwood and the
failure/refusal of the Bureau of Prisons to transfer him to
another facility renders his imprisonment unlawful. See id. at
3-5. He appears to seek either release from confinement in the
"hole" or transfer to another institution. See id. at 5.

## II. Law

### A. Habeas Corpus

Habeas corpus review is available under 28 U.S.C. § 2241 if
a person is "in custody in violation of the Constitution or laws
or treaties of the United States ...." 28 U.S.C. § 2241(c)(3).
"The fundamental purpose of a § 2241 habeas proceeding is the
same as that of § 2254 habeas and § 2255 proceedings: they are
'an attack by a person in custody upon the legality of that
custody, and ... the traditional function of the writ is to
secure release from illegal custody.'" McIntosh v. United States
Parole Comm'n, 115 F.3d 809, 811 (10th Cir. 1997)(quoting Preiser
v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.2d

439 (1973))(alteration in original).  Thus, a habeas corpus
action challenges the fact or duration of physical confinement
and seeks either immediate or speedier release from that
confinement.  See Preiser v. Rodriguez, 411 U.S. at 498, 93 S.Ct.
at 1840; see also McIntosh v. United States Parole Comm'n, 115
F.3d at 812 ("A habeas corpus proceeding 'attacks the fact or
duration of a prisoner's confinement and seeks the remedy of
immediate release or a shortened period of confinement.")
(citation omitted); id. ("[T]he essential nature of all § 2241
actions is a challenge to federal custody.").

     In contrast, a prisoner who is seeking a different program
or location is challenging the conditions of and not the fact of
his confinement.  McIntosh v. United States Parole Comm'n, 115
F.3d at 812.  His remedy is under civil rights law.  Id.  The
Court of Appeals for the Seventh Circuit has explained this
distinction quite clearly:

> If the prisoner is seeking what can be fairly described
> as a quantum change in the level of custody--whether
> outright freedom, or freedom subject to the limited
> reporting and financial constraints of bond or parole or
> probation, ... then habeas corpus is his remedy.  **But if
> he is seeking a different program or location or
> environment, then he is challenging the conditions rather
> than the fact of his confinement** and his remedy is under
> civil rights law, even if, as will usually be the case,
> the program or location or environment that he is
> challenging is more restrictive than the alternative he
> seeks.

Glaus v. Anderson, 408 F.3d 382, 386-87 (7th Cir. 2005)(quoting
Graham v. Broglin, 922 F.2d 379, 381 (7th Cir. 1991))(alteration
in original)(bold added); see also Kamara v. Farquharson, 2
F.Supp.2d 81, 89 (D. Mass. 1998)("It is a well-settled principle
that a habeas petition is the appropriate means to challenge the
'actual fact or duration' of one's confinement, see Heck v.
Humphrey, 512 U.S. 477, 481, 114 S.Ct 2364, 2369, 129 L.Ed.2d 383

4

(1994), whereas a civil rights claim is the proper means to challenge the 'conditions' of one's confinement. See Viens v. Daniels, 871 F.2d 1328, 1333 (7th Cir. 1989) ...."). Thus, "habeas jurisdiction is absent, and a [42 U.S.C.] § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." Docken v. Chase, 393 F.3d 1024, 1030 n.4 (9th Cir. 2004)(quoting Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003)); see also Walker v. O'Brien, 216 F.3d 626, 636-37 (7th Cir. 2000)("[T]he legislative history of both the [Prison Litigation Reform Act ("PLRA")] and [the Antiterrorism and Effective Death Penalty Act ("AEDPA")] ... supports a clear line between civil actions attacking conditions of confinement (subject to the PLRA) and habeas corpus petitions attacking the fact or duration of confinement (subject to the rules governing habeas corpus).").

## B.  Conditions of Confinement

To demonstrate a prima facie violation of the Eighth Amendment's prohibition against cruel and unusual punishment based on the conditions of confinement, a prisoner must satisfy two requirements. See Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct 1970, 1977, 128 L.Ed.2d 811 (1994); see also Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). First, the deprivation alleged must be, objectively, "sufficiently serious," Farmer v. Brennan, 511 U.S. at 834, 114 S.Ct at 1977 (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)); see also Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992); a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," Farmer v. Brennan, 511 U.S. at 834, 114 S.Ct at 1977 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). Second, the prison official must have a "sufficiently culpable

state of mind," <u>Farmer v. Brennan</u>, 511 U.S. at 834, 114 S.Ct at
1977 (quoting <u>Wilson v. Seiter</u>, 501 U.S. at 297, 111 S.Ct. at
2323); <u>see also</u> <u>id.</u> at 302-03, 111 S.Ct. at 2326; <u>Hudson v.
McMillian</u>, 503 U.S. at 5, 112 S.Ct. at 998; <u>Estelle v. Gamble</u>,
429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), such
that he is deliberately indifferent to the inmate's health or
safety, <u>Farmer v. Brennan</u>, 511 U.S. at 834, 114 S.Ct at 1977
(quoting <u>Wilson v. Seiter</u>, 501 U.S. at 302-303, 111 S.Ct. at
2326-27); <u>see also</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 34-35, 113
S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993); <u>Hudson v. McMillian</u>, 503
U.S. at 5, 112 S.Ct. at 998; <u>Estelle v. Gamble</u>, 429 U.S. at 106,
97 S.Ct. at 292; <u>Williams v. Griffin</u>, 952 F.2d at 824 (stating
that to establish a prima facie Eighth Amendment violation with
respect to prison conditions plaintiff must demonstrate
deprivation of a basic human need and deliberate indifference to
prison conditions on part of prison officials).

The requirement that the claimed injury involve deprivation
of "the minimal civilized measure of life's necessities," <u>Rhodes
v. Chapman</u>, 452 U.S. at 347, 101 S.Ct. at 2399, is the touchstone
of a conditions of confinement suit, <u>Hudson v. McMillian</u>, 503
U.S. at 11, 112 S.Ct. at 1001.  Thus, "extreme deprivations are
required to make out a conditions-of-confinement claim." <u>Id.</u> at
9, 112 S.Ct. at 1000; <u>see also</u> <u>id.</u> ("only those deprivations
denying 'the minimal civilized measure of life's necessities' are
sufficiently grave to form the basis of an Eighth Amendment
violation")(quoting <u>Wilson v. Seiter</u>, 501 U.S. at 298, 111 S.Ct.
at 2324 (quoting <u>Rhodes v. Chapman</u>, 452 U.S. at 347, 101 S.Ct. at
2399)(citation omitted)); <u>Wilson v. Yaklich</u>, 148 F.3d 596, 601
(6th Cir. 1998)(stating that a prisoner must allege that he has
suffered or is threatened with suffering actual harm as a result
of the defendants' acts or omissions before he can make any
conditions of confinement claim with an arguable basis in the

Eighth Amendment); <u>Doe v. Welborn</u>, 110 F.3d 520, 524 (7th Cir.
1997)(finding, on facts of case, that prisoner's claim of
psychological injury resulting from having to live in fear of
assault by gang members did not "reflect the deprivation of 'the
minimal civilized measures of life's necessities'")(quoting
<u>Wilson v. Seiter</u>, 501 U.S. at 298, 111 S.Ct. at 2324; <u>Rhodes v.
Chapman</u>, 452 U.S. at 347, 101 S.Ct. at 2399); <u>Babcock v. White</u>,
102 F.3d 267, 272 (7th Cir. 1996)(same).  This requirement is
based on the fact that the substantive limits on state action set
by the Eighth Amendment and the Due Process Clause are
transgressed only where the State "fails to provide for [a
prisoner's] basic human needs--<em>e.g.</em>, food, clothing, shelter,
medical care, and reasonable safety ...."  <u>DeShaney v. Winnebago
County Dep't of Social Servs.</u>, 489 U.S. 189, 200, 109 S.Ct. 998,
1005, 103 L.Ed.2d 249 (1989).

**III.  Discussion**

   **A.  Viability of Claim for Habeas Corpus**

   It is apparent from the allegations of the Petition that
Quinones is not challenging the fact or duration of his physical
confinement, but, rather, the conditions of that confinement.
<u>See</u> Petition at 1, 4-7.  Indeed, Quinones specifically indicates
that this is so.  <u>See id.</u> at 1 (indicating that Petition concerns
jail or prison conditions).  The relief he seeks is to be
transferred to another institution or released from the "hole."
<u>See id.</u> at 5.  Although he has titled his pleading as a Petition
for Writ of Habeas Corpus under 28 U.S.C. § 2241, this does not
alter the fact that the Petition actually challenges the
conditions of his confinement.  <u>See Preiser v. Rodriguez</u>, 411
U.S. at 498, 93 S.Ct. at 1840; <u>McIntosh v. United States Parole
Comm'n</u>, 115 F.3d at 812; <u>Kamara v. Farquharson</u>, 2 F.Supp.2d at 89
(holding that prisoner's request for transfer to another facility
"does not transform what is at heart a conditions-of-confinement

basis for his constitutional challenge"). Accordingly, I find that Quinones may not proceed with a habeas corpus petition. See Glaus v. Anderson, 408 F.3d at 388 (holding that prisoner may not proceed with a habeas corpus petition where his challenge concerned only the conditions of his confinement or the administrative rules of the Bureau of Prisons); Ramirez v. Galaza, 334 F.3d at 859 ("[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence.").

**B. Amenability of Claim to Being Recharacterized**

Having determined that the instant action should not be allowed to proceed as a habeas corpus petition, the Court now turns to the question of whether this action should be dismissed or transferred to the Pennsylvania federal district court which has jurisdiction over USP Allenwood. Such a transfer would involve recharacterizing the action as civil rights suit. The Seventh Circuit has recently considered this question in light of the changed legal landscape caused by the PLRA and the AEDPA:

> In Graham [v. Broglin, 922 F.2d 379 (7th Cir. 1991)], we wrote that if a *pro se* litigant "asks for habeas corpus when he should have brought a civil rights suit, all he has done is mislabel his suit, and either he should be given leave to plead over or the mislabeling should simply be ignored." 922 F.2d at 382. In Bunn v. Conley, 309 F.3d 1002 (7th Cir. 2002), however, we recognized that the proper scope of recharacterization had been narrowed as a result of the changed landscape caused by the ... (PLRA) and the ... (AEDPA). "[T]here are pitfalls of different kinds for prisoners using the wrong vehicle .... If a person files a habeas corpus petition that should be presented under other statutes, he or she may be subject to the three-strikes rule of the PLRA[3] and somewhat different exhaustion requirements."[4]

---

[3] "28 U.S.C. § 1915(g) of the ... Prison Litigation Reform Act (PLRA) ... precludes the filing of *in forma pauperis* (IFP) civil actions by a prisoner who has had similar petitions dismissed as

Id. at 1007.   Other important differences include the
identity of the defendant (the warden, versus the
doctors, or guards, or others responsible for the alleged
injury), the amount of the filing fee, the way in which
exhaustion must be accomplished, and the type of
restriction on successive lawsuits.   In most cases,
therefore, the district court should evaluate cases as
the plaintiffs label them.   Id.

This is not to say that recharacterization is utterly
out of the question.   In Castro v. United States, the
Supreme Court considered the reverse of the current
situation: recharacterization of a pro se litigant's
civil rights claim into a petition under 28 U.S.C. §
2255.   See 540 U.S. 375, 383, 124 S.Ct. 786, 157 L.Ed.2d
778 (2003).   The Court noted that a district court may
recharacterize a civil rights claim, but before doing so
it "must notify the pro se litigant that it intends to
recharacterize the pleading, warn the litigant that this
recharacterization means that any subsequent § 2255
motion will be subject to the restrictions on 'second or
successive' motions, and provide the litigant an
opportunity to withdraw the motion or amend it so that it
contains all the § 2255 claims he believes he has."   Id.
It seems to us that the same logic should apply to the
potential conversion of a habeas corpus petition into a

---

frivolous on three or more prior occasions."   Wilson v. Yaklich, 148
F.3d 596, 599 (6th Cir. 1998); see also 28 U.S.C. § 1915(g) ("In no
event shall a prisoner bring a civil action or appeal a judgment in a
civil action or proceeding under this section if the prisoner has, on
3 or more prior occasions, while incarcerated or detained in any
facility, brought an action or appeal in a court of the United States
that was dismissed on the grounds that it is frivolous, malicious, or
fails to state a claim upon which relief may be granted, unless the
prisoner is under imminent danger of serious physical injury.").

⁴ With regard to suits based on conditions of confinement, the
PLRA provides in pertinent part that: "'[n]o action shall be brought
with respect to prison conditions under [42 U.S.C. §] 1983 ... or any
other Federal law, by a prisoner confined in any jail, prison, or
other correctional facility until such administrative remedies as are
available are exhausted.'"   Dixon v. Page, 291 F.3d 485, 488 (7th Cir.
2002)(quoting 42 U.S.C. § 1997e(a) (1996))(first alteration in
original); see also Porter v. Nussle, 534 U.S 516, 532, 122 S.Ct. 983,
992, 152 L.Ed.2d 12 (2002) ("[T]he PLRA's exhaustion requirement
applies to all inmate suits about prison life, whether they involve
general circumstances or particular episodes, and whether they allege
excessive force or some other wrong.").

civil rights claim.  **If the complaint is amenable to conversion on its face, meaning that it names the correct defendants and seeks the correct relief, the court may recharacterize the petition so long as it warns the pro se litigant of the consequences of the conversion and provides an opportunity for the litigant to withdraw or amend his or her complaint.**

Glaus v. Anderson, 408 F.3d 382, 388 (7th Cir. 2005)(fourth alteration in original)(bold added).

This Court finds the above analysis to be helpful and applies it to Quinones' case.  The Petition as presently drafted alleges neither that Quinones is experiencing a serious deprivation of a basic human need nor that prison officials are deliberately indifferent to such deprivation, allegations necessary to plead a prima facie conditions of confinement case. See Williams v. Griffin, 952 F.2d at 824.  Rather, he contends that he is unable to participate in drug, alcohol, and mental health treatment programs allegedly mandated by the Court because such programs are not available in the "hole," where he has voluntarily placed himself to avoid gang members who want to harm him.  Petition at 4.  By way of relief, Quinones seeks either a transfer to another institution or release from the "hole."  See id. at 5.

As already noted,[5] Quinones' claim that he was ordered to participate in drug and alcohol abuse treatment and mental health and psychological treatment while incarcerated is not supported by the Judgment.  Thus, any conditions of confinement claim based on this contention is clearly baseless and is subject to dismissal pursuant to 28 U.S.C. § 1915(d).  See Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989)(stating that § 1915(d) accords judges the power "to pierce the veil of the complaint's factual allegations and

---

[5] See n.2.

10

dismiss those claims whose factual contentions are clearly
baseless").

To the extent that Quinones contends he is being denied
access to rehabilitative programs, I find that such deprivation
does not constitute denial of a basic human need.  Consequently,
the failure to provide such programs (or to allow access to them)
cannot provide a basis for a constitutional claim under the
Eighth Amendment.  See Moody v. Daggett, 429 U.S. 78, 88 n.9, 97
S.Ct. 274, 279 n.9, 50 L.Ed.2d (1976)(stating that Congress has
given federal prison officials full discretion to control
prisoner classification and eligibility for rehabilitative
programs in the federal system and a "petitioner has no
legitimate statutory or constitutional entitlement sufficient to
invoke due process"); see also Balla v. Idaho State Bd. of Corr.,
869 F.2d 461, 470 (9th Cir. 1989)(finding support for "the
proposition that those serving criminal sentences have no
constitutional right to rehabilitation").  Similarly, Quinones
has no constitutional right to be housed at a particular
institution or to receive a particular security classification.
See Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997).  Thus, I
conclude that, in the the absence of some contention by Quinones
that his confinement in the "hole" deprives him of a basic human
need, the failure of prison officials to transfer him to another
institution or to release him from the "hole" cannot provide the
basis for a constitutional claim pursuant to 42 U.S.C. § 1983.[6]

---

[6] Other than implying that the treatment programs in which he
desires to participate are not available to him, Quinones has not
described the conditions in the "hole."  This omission strongly
suggests that the deprivations he is experiencing do not involve
denial of "the minimal civilized measure of life's necessities,"
Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d
271 (1991).
    Nevertheless, if Quinones contends that the conditions in the
"hole" are so onerous that he will suffer serious harm if he remains
there for a long period of time and that the prison officials are

Accordingly, I find that the Petition is not amenable to being recharacterized as a civil rights action and transferred to the Middle District of Pennsylvania.  Rather, it should be dismissed because it fails to state a claim upon which relief can be granted.  I so recommend.

### C. Motion for IFP

Having determined that Quinones may not proceed this action as a habeas corpus petition and that the action is not amenable to being recharacterized as a civil rights action, I recommend that the Motion for IFP be denied because the Petition fails to state a claim upon which relief may be granted, see 28 U.S.C. § 1915(e)(2)(B).

### Conclusion

For the reasons stated above, I recommend that the Petition be dismissed and that the Motion for IFP be denied.  Any

---

deliberately indifferent to his situation, he should file an objection to this Report and Recommendation so stating.  In that objection, he should detail the onerous conditions, the harm he has experienced or will experience, and the prison officials' indifference to that harm. Cf. Sheley v. Dugger, 833 F.2d 1420, 1429 (11th Cir. 1987) ("The deprivations associated with an institutional lock-up, including twenty-four hour confinement, and curtailment of all association, exercise and normal vocational and educational activity, may constitute a due process violation, as well as a violation of the Eighth Amendment, if they persist too long.").

If Judge Torres determines that the information contained in the objection allows the Petition to be recharacterized as a civil rights action and transferred to the United States District Court for the Middle District of Pennsylvania, I recommend that prior to such transfer Quinones be informed of the following consequences and given the opportunity to withdraw or dismiss the Petition prior to such recharacterization.  First, he will be required to pay a filing fee of $250.00, and periodically money will be taken automatically from his prisoner's trust account until the full filing fee of $250.00 has been paid.  See 28 U.S.C. § 1915(b).  (Although the filing fee increased to $350.00 on April 9, 2006, because Quinones filed this action prior to that date, the lower filing fee applies to his case.)  Second, if, after being recharacterized and transferred, this action is ultimately dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, it may count as one strike of the three-strikes provision of the PLRA, see 28 U.S.C. § 1915(g).

objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and the right to appeal the district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

DAVID L. MARTIN
United States Magistrate Judge
April 28, 2006

Accepted in the absence of an objection.

Ernest C. Torres
Chief, US District Judge

Date: 5/17/06

13